UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CASHMAN EQUIPMENT CORP.**                                      **CIVIL ACTION**

**VERSUS**

**ROZEL OPERATING CO., ET AL**                                   **NO. 08-363-C-M2**

## RULING & ORDER

This matter is before the Court on the Motion to Compel Discovery Responses (R. Doc. 84) filed by Continental Insurance Company ("Continental"). Plaintiff, Cashman Equipment Corporation ("Cashman"), has filed an opposition (R. Doc. 92) to Continental's motion.

## PROCEDURAL BACKGROUND

In the present motion, Continental seeks to have the Court compel Cashman to fully and completely respond to its Supplemental Request for Production Nos. 1 and 2 by producing any and all depreciation schedules for the barges involved in the incident that is the subject of this litigation (the JMC 107 and JMC 109) for the years 2005-2008. Cashman objected to those requests and refused to produce the depreciation schedules on the ground that they are irrelevant to this litigation in that they are unrelated to the actual market value, replacement value, or scrap value of the barges at issue and because the schedules contain information that is proprietary and/or protected. Cashman further responded that "depreciation" is "a term of art" and that any depreciation schedules created by Cashman were done to comply with the applicable federal and state tax codes. *See*, Exhibit B to Continental's motion.

1

In this motion, Continental contends that the depreciation schedules should be produced because they will assist it in determining the value of the JMC 109 (the barge remaining at the bottom of the Gulf of Mexico, which is the primary barge at issue in this suit) both before and during its charter by defendant, Rozel Operating Company. According to Continental, the value of the JMC 109 barge before and during its charter "directly affects Continental's defenses to Cashman's claims for coverage by the Hull Policy H 0874759 issued by Continental."[1]  Finally, Continental also seeks an award of the reasonable expenses that it incurred in bringing this motion pursuant to Fed. R. Civ. P. 37(a)(5).

## LAW & ANALYSIS

Cashman has cited to several cases that purportedly support its position that the value of the barges in question as reported in its depreciation schedules is irrelevant to the actual market value or replacement value of the barges for purposes of the issue of insurance coverage in this litigation.  The undersigned, however, finds that the cases cited by Cashman and other jurisprudence reviewed as part of the Court's own research indicate that, while depreciation schedules, on their own, may not be determinative of the actual market value or replacement value of a piece of property, they are not irrelevant to that

---

[1] As discussed in more detail in other rulings of the Court, this suit relates to Rozel's chartering Cashman's barges, the JMC 107 and the JMC 109.  According to Cashman's complaint, pursuant to the charter agreement, Rozel was required to obtain a hull insurance policy covering each barge, with Cashman being an additional assured on the policies.  Pursuant to the charter agreement, Rozel stipulated that the contractually-agreed value of each barge was $2,000,000.00.  When Rozel was unable to raise the JMC 109 from the Gulf, Cashman filed a claim for the loss of that barge with Continental, and Continental denied that claim.  After Cashman filed this suit, wherein it names Continental as a defendant, Continental challenged the contractually-agreed value of the JMC 109.  Continental seeks the depreciation schedules in question in an effort at proving the value of that barge.

determination. They constitute one item of evidence that may be considered in making that value determination.

For example, in *In re Gilbertson Restaurants, LLC*, 2004 WL 1724876 (N.D. Iowa 2004), one of the cases cited by Cashman, a creditor holding a valid security interest in certain restaurant property sought to prove the present value of that property based largely upon depreciation schedules from the debtor's tax returns, with no formal appraisal of the property having been undertaken. While the court noted that "[d]epreciation claimed in tax schedules is an instrument purely of tax law and has little, if any, relationship to actual value or actual depreciation of the equipment in question," the court nevertheless recognized that there is legal authority for the proposition that, under appropriate circumstances, depreciation schedules can be used as a measure of depreciation. The court explained that the use of depreciation schedules to determine value is dependent upon the type of property and many other factors, including periodic maintenance. Specifically, in *Gilbertson*, the court concluded that, absent an accurate appraisal of the property in question, the depreciation schedules, *in and of themselves*, did not provide an accurate measure of present value or decreased value of the equipment over the years. *Id.*, at *3. Thus, while *Gilbertson* indicates that depreciation schedules, standing alone, may not be a reliable indicator of actual value or actual depreciation in property, they may nevertheless be considered, along with other evidence, in determining property value in some circumstances.

Cashman also quotes a single sentence from *Hoover v. Par Elec. Contractors, Inc.*, 600 S.W.2d 504 (Mo.App.W.D. 1980) in support of its position. The quoted sentence states, "[d]epreciation may refer to either actual loss in value due to deterioration or

3

obsolescence or to the more artificial bookkeeping adjustments made to allocate an item's cost throughout its useful life . . . depreciated book value for tax purposes may bear little relation."[2] That quote, however, is derived from a prior case, *Cassady v, McKinney*, 296 So.2d 94 (Fla.App. 1974), wherein the court was considering a specific tax assessment statute. Furthermore, even if the Court considers that quote as support for the proposition that depreciation for purposes of determining actual loss in value is distinct from depreciation in book value for tax purposes, the quoted sentence does not indicate that depreciation in book value for tax purposes is completely irrelevant to a determination of actual value – it simply indicates that they "may bear little relation." As such, the quoted sentence does not entirely support Cashman's argument concerning irrelevancy. Even assuming the value of the JMC 109, as reported on Cashman's depreciation schedules, has minimal relevancy to a determination of that barge's actual market or replacement value, it nevertheless has some relevance and could, in combination with other evidence, demonstrate the barge's value.[3]

In the final case cited by Cashman, *Oliver B. Cannon and Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160 (Del.Supr. 1978), the court was attempting to compute a plant owner's loss of profits brought about by a subcontractor's breach, including any actual decline in

---

[2] Cashman also cites *State ex rel. Pettis County R-XII School District v. Kahrs*, 258 S.W.3d 85 (Mo.App.W.D. 2008) for the same proposition.

[3] In *Hoover*, the court held that, under the facts of that case, the evidence supported the trial court's findings that the equipment depreciation was used as a bookkeeping entry for tax purposes and did not relate to the intrinsic or true value of the equipment items at issue. The court limited its holding to the facts of that case; yet, Cashman argues that holding as a general proposition that, in all cases, depreciation in bookkeeping entries for tax purposes is irrelevant to the market value of a piece of property. The undersigned cannot reach that general conclusion based upon the limited holding of a thirty year-old Missouri state court case.

value or depreciation of the plant while it was out of production.  The court held that the owner was required to establish that loss by showing what, in fact, the actual decline in value was, and it held that the decline in value "could not be established entirely by reference to an accounting technique, no matter how reliable [that technique] was for other purposes."  Specifically, the court held that the "straight-line method of depreciation" referred to by the owner was a technical accounting procedure for allocating an item's cost over its useful life, and such procedure "did not *necessarily* represent the actual loss in value of an item."  *Id.*, at 1163 [Emphasis added].  The court noted, however, that the straight-line method was defensible if the use obtained from the asset was roughly equal in each year over [the equipment's] useful life."  *Id.*  The court found that the straight-line method was an improper basis for computing damages in that case, which was not concerned with recovery of costs over useful life but instead was concerned with establishing actual loss resulting from depreciation in litigation seeking compensation for lost profits.  *Id.*  Again, such limited holding does not support a broad proposition that depreciation schedules containing the value of property for tax purposes are completely irrelevant to a determination of the actual market or replacement value of that property, as Cashman contends.

Furthermore, the Court's own research reveals that the Fifth Circuit Court of Appeals has held that an owner's testimony as to the value of its property can be based, at least in part, on depreciation schedules, and other courts have noted that depreciation schedules are an item of evidence that may be considered in determining an asset's value.  *See, Lacombe v. A-T-O, Inc.*, 679 F.2d 431 (5th Cir. 1982)(holding that the trial court improperly refused to admit an owner's testimony as to the value of his property because the

5

testimony would have been based at least in part on depreciation schedules as to the accuracy of which he was not qualified to testify. The court noted that the basis of the owner's value testimony (*i.e.*, the depreciation schedules) would go to its weight, rather than its admissibility); See also, Karason v. Commissioner of Internal Revenue, 2007 WL 1224613 (U.S.Tax Ct. 2007)(noting that, other than a handwritten depreciation schedule, the plaintiff had not produced any documentation supporting the cost of certain medical equipment or its fair market value - indicating that depreciation schedules are at least one item of evidence that may be considered in determining fair market value); *In re McCleary*, 284 B.R. 876 (Bkrtcy. N.D. Iowa 2002)(where a depreciation schedule, among other evidence, was held to have provided a bank's loan officer with insight regarding the debtor's assets, their value, and encumbrances).[4]

Considering that discovery is based upon the liberal standard of relevancy, the undersigned finds that Continental is entitled to discover the depreciation schedules relating to the JMC 109 for the years 2005-2008 since such schedules, among other evidence, may be used in determining the actual market value of that barge. Any issues relating to the limited relevance of those schedules would go to the admissibility of that evidence or its weight but do not preclude its discovery at this stage. However, because the value of the JMC 107 barge itself is not at issue in this litigation, the depreciation schedules relating to

---

[4] *See also, Paul v. U.S.*, 21 Cl.Ct. 415 (Cl.Ct. 1990)(where the plaintiff put into evidence a depreciation schedule and an Oilfield Research valuation to show the value of an oil well casing. While the court determined that the fair market value of the property at the time of a taking was far less than the purchase price in the depreciation schedule, that schedule was nevertheless considered by the court); *Clinchfield R. Co. v. Lynch*, 605 F.Supp.1005 (D.C.N.C. 1985)("The standard method of valuing machinery and equipment has been to take the taxpayer's purchase price and then resort to depreciation schedules to determine its value given its age").

that barge are irrelevant and need not be produced. Additionally, because Cashman has not cited any legal support for its contention that the depreciation schedules should not be produced because they are proprietary or protected and it does not appear that such a contention has been a basis for withholding depreciation schedules as evidence of property value in other cases, the Court will not deny production of the schedules on that unsupported basis. If Cashman is concerned about the purported confidentiality of such schedules, it can request that such documents be produced subject to a protective order. Finally, the undersigned declines to award attorney's fees and expenses to Continental since Cashman's objections to Continental's request for depreciation schedules are not completely without basis and likely could not have been resolved without resort to court intervention.

Accordingly;

**IT IS ORDERED** that the Motion to Compel Discovery Responses (R. Doc. 84) filed by defendant, Continental Insurance Company, is hereby **GRANTED IN PART**, in that plaintiff, Cashman Equipment Corporation, shall produce copies of any and all depreciation schedules relating to the JMC 109 barge for the years 2005-2008 within fifteen (15) days of this Order, and **DENIED IN PART**, in that Cashman need not produce any depreciation schedules relating to the JMC 107 barge nor pay an award of expenses and attorney's fees in connection with this motion.

Signed in chambers in Baton Rouge, Louisiana, May 27, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**