## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**CASHMAN EQUIPMENT CORP.**　　　　　**CIVIL ACTION**

**VERSUS**　　　　　**NO: 08-363**

**ROZEL OPERATING CO., ET AL.**　　　　　**JUDGE LEMMON**

　　　　　**MAGISTRATE SHUSHAN**

## ORDER AND REASONS

　　**IT IS HEREBY ORDERED** that St. Paul Surplus Lines Insurance Company's Motion to Dismiss all claims asserted against it by Stokes & Spiehler Offshore, Inc. (Doc. #162) is **GRANTED** as to Stokes' claim under the Texas Prompt Payment Statute, Texas Insurance Code § 542.060, and that claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Stokes' claims for defense and indemnity and bad faith penalties under Louisiana Revised Statutes §§ 22:1892 and 22:1973.

## BACKGROUND

　　Rozel Operating Co. operates a natural gas production platform located in the Gulf of Mexico off the coast of Cameron, Louisiana in the West Cameron Block No. 2. In June 2007, Rozel chartered two barges, JMC 107 and JMC 109, from Cashman Equipment Corp. under bareboat charter parties. Rozel intended to partially submerge the barges near the platform to use as breaker barges to alleviate wave action while work was performed to the platform. Stokes, an engineering and consulting company with which Rozel has had a Master Service Contract for engineering and consulting services since November 20, 2003, was involved in the sinking operation.

Pursuant to the charter parties, Rozel retrieved the barges from Cashman in Amelia, Louisiana, began paying charter hire, and transported the barges to the platform. Two tug boats were utilized in the sinking operation. While the JMC 109 was being ballasted, the JMC 107 came loose, and one or both of the tugs went to retrieve it. When the JMC 107 was brought into position, it struck the end of the JMC 109, and sustained hull damage.

On August 15, 2007, Rozel attempted to pump out the barges to return them to Cashman. The JMC 107 was raised on August 30, 2007, and returned to Cashman at Dulac, Louisiana on September 13, 2007. Rozel was unable to raise the JMC 109, and consequently, has not returned it to Cashman. Further, Rozel has ceased paying charter hire for the JMC 109.

On June 18, 2008, Cashman filed this suit against: Rozel; CNA Insurance Company, which issued the hull and machinery insurance policy to Rozel on the JMC 109; St. Paul, which issued a commercial general liability insurance policy and an excess insurance policy to Rozel that were effective at the time of the incident[1]; the owners of the tug boats, *in personam*; and, the tug boats, *in rem*.[2] Cashman alleges that Rozel breached the charter parties and that CNA acted in bad faith in adjusting its claim. On July 1, 2010, Cashman amended its complaint alleging that Rozel negligently entrusted the barges to Stokes, and that Stokes was negligent in the manner in which it sank and attempted to raise the barges.

On October 25, 2011, Stokes filed an amended cross-claim in which it added St. Paul as a defendant-in-cross-claim and reasserted all of its cross-claims against Rozel. Stokes' claims against Rozel include claim that Rozel is obligated under the Master Services Contract to defend, indemnify,

---

[1] The excess insurance policy has the same substantive provisions as the commercial general liability policy.

[2] The court dismissed Cashman's claims against St. Paul and the tug boat interests with prejudice.

and hold Stokes harmless for Cashman's claims against Stokes. Stokes also alleges that it is covered under the St. Paul insurance policies because the Master Service Contract was executed before St. Paul issued the policies to Rozel. Stokes contends that St. Paul breached its insurance contracts with Rozel by failing to cover Rozel's defense and indemnity obligation to Stokes.[3] Stokes also alleges that St. Paul owes it defense an indemnity because Stokes was an additional insured under the policies. Stokes contends that St. Paul is liable for penalties under the applicable Louisiana or Texas law due to its failure to timely provide Stokes with defense and indemnity.

On December 6, 2011, St. Paul filed this motion to dismiss Stokes' claims against it. St. Paul argues that it does not owe defense and indemnity to Stokes because Stokes is not an additional insured or contractual indemnitee under the policies. St. Paul argues that Stokes cannot seek to enforce Rozel's rights under the insurance contracts. Specifically, St. Paul argues that, under Louisiana law, an insurer's obligation to provide defense and indemnity is to the named insured. Also, St. Paul argues that Stokes cannot maintain a claim against it under Texas law because Texas has direct action statute. Alternatively, St. Paul argues that if Stokes could maintain a claim against it as a contractual indemnitee, coverage for Cashman's claims against Stokes are excluded under policies' provisions pertaining to control of property and contracts for engineering services. Finally, St. Paul argues that Stokes cannot assert claims against it for penalties.

Stokes argues that it has stated a claim against St. Paul for defense and indemnity because Stokes is a contractual indemnitee and the policies provide for defense and indemnity of an indemnified party. Also, Stokes argues that coverage is not excluded because it was providing

---

[3] St. Paul has defended Rozel against Cashman's claims under the commercial general liability policy, pursuant to a reservation of rights letter, since the inception of the suit.

consulting, not engineering, services to Rozel at the time of the incident.  Further, Stokes argues that

the "control of property" exclusions do not unambiguously exclude coverage, making St. Paul liable

to defend it.  Stokes contends that it has stated claims against St. Paul for penalties under Louisiana

or Texas law due to St. Paul's failure to provide it with a defense.

## ANALYSIS

### A.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a

complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6)

motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be

pleaded. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell

Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face

when the plaintiff pleads facts from which the court can "draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127

S.Ct. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most

favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir.

2008).  However, the court need not accept legal conclusions couched as factual allegations as true.

Iqbal, 129 S.Ct. at 1949-50.

In considering a motion to dismiss for failure to state a claim, a district court may consider

only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean

Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  However, "[d]ocuments

that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Id. at 498-99 (internal citations omitted).

**B.      The Master Service Contract**

The Master Service Contract between Rozel and Stokes dated November 20, 2003, and renewed in 2004, is an ongoing contract which states that Stokes "is in the business of providing engineering and consulting services, both on and offsite, in the oil and gas industry in connection with the drilling, workover and/or operation of oil and/or gas wells situated onshore and in inland and offshore waters," and that Stokes shall provide such services to Rozel when requested.  It includes the following provisions regarding indemnity:

> 7.  **Indemnity:** In order to allocate respective responsibilities of [Rozel] and [Stokes] for liabilities arising out of personal injury or property damage, it is agreed between [Rozel] and [Stokes] that certain responsibilities for personal injuries and property damage arising out of the performance of this contract should be allocated between them in order to avoid protracted litigation between [Rozel] and [Stokes] along with the associated legal expenses and so that insurance or self-insurance may be arranged by each party as necessary to protect them against these exposures to loss.  The following sets out the specific of the agreement between [Rozel] and [Stokes] as to the allocation of the responsibilities.
>
> *          *          *
>
> > (b)  [Rozel] agrees to defend, indemnify and hold [Stokes] . . . harmless from and against any and all losses, claims, demands, fines, penalties, liabilities or causes of action of every kind and character, in favor of any person or party, at [Rozel's] sole expense, even though caused in whole or in part by a pre-existing defect, indemnitees' negligence or strict liability, or other legal fault of indemnitees, [Rozel] shall fully defend any such claim, demand or suit at its sole expense, including attorneys' fees, even if the same is groundless
> >
> > > (i) for injury to or illness or death of any employee of [Rozel], its joint interest owners or any contractor and

its subscontractors or employee of any contractor or subcontractor of [Rozel] and for damage to property of [Rozel], its joint interest owners or its contractors and subcontractors (other than [Stokes] and its subcontractors), which injury, illness, death or damage arises out of or is incident to the work performed under this contract.

## C.    The Insurance Policies

Rozel's St. Paul insurance policies in effect at the time of the incident provided coverage to Rozel, and persons or organizations for which Rozel agreed in a written contract to obtain insurance,[4] for property damage[5] caused by an event[6] occurring while the policies were in effect. St. Paul has a right and duty to defend Rozel and additional insured against a claim or suit for damage covered by the policies, even if all of the allegations of the claim or suit are groundless, false, or fraudulent. The policies exclude coverage for property damage to property that Rozel rents, leases, or borrows from another.  Also, the policies generally exclude coverage for contractual liability.  However, there is an exception to the exclusion for "covered contracts."  With respect to contract liability, the policies specifically provide, in pertinent part:

**Contract liability.**  We won't cover injury or damage or pollution clean-up costs for which the protected person has assumed liability under a contract or agreement.  But we won't apply this exclusion to

---

[4]  The Additional Protected Persons Endorsement states:

Additional protected persons required by written contract for insurance. All persons or organizations that you agree in a written contract for insurance to add as additional protected persons under this agreement are protected persons only for covered bodily injury or property damage that results from your work, to which that written contract for insurance applies, for any of those persons or organizations.

[5]  The policy defines property damage as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged."

[6]  "Event" is defined as an accident.

injury or damage or pollution clean-up costs for which the protected person would have liability without the contract or agreement.

Nor will we apply this exclusion to the liability of another to pay damages for:

- bodily injury or property damage sustained by others if you have assumed such liability under a covered contract made before the bodily injury or property damage happens.

\*      \*      \*

If you have agreed under the same covered contract to defend, or pay for the defense of, an indemnitee against a claim or suit for such injury or damage, we'll defend the indemnitee against the claim or suit.  But we'll do so because of that covered contract only if:

- that indemnitee isn't a protected person for such injury or damage;

- the claim or suit is for injury or damage sustained by others for which you have assumed the liability of that indemnitee under the covered contract;

- the injury or damage is covered by this agreement;

- the claim or suit is made or brought against you and the indemnitee;

- we're defending you against the claim or suit under this agreement;

- all of our indemnitee defense control and authority requirements are fulfilled; and

- all of our indemnitee defense cooperation and notice requirements are fulfilled.

When an indemnitee is a protected person for the claim or suit, we'll apply the Right and duty to defend section, rather than this contract liability indemnitee defense coverage, in connection with such claim or suit.

When we provide that contract liability indemnitee defense coverage, we'll do all of the following:

- We'll defend the indemnitee even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we wont' have a duty to perform any other act or service.

- We'll pay all covered indemnitee defense expenses incurred by us in connection with such claim or suit. Such payments are in addition to the limits of coverage.

*     *     *

*Covered contract* means:

*     *     *

- that part of any other contract or agreement under which you assume the liability of another to pay damages for injury or damage that's sustained by others.

But we won't consider any of the following parts of those other contracts or agreements under which you assume the liability of another to pay damages to be a covered contract:

- Architect, engineer, or surveyor indemnity.

- Architect, engineer, or surveyor professional services by protected person indemnity.

*Architect, engineer, or surveyor indemnity* means that part which indemnifies any architect, engineer, or surveyor for injury or damage that results from:

- the preparation or approval of, or failure to prepare or approve, any drawing and specificition, or any map, opinion, report, survey, change order, field order, or shop drawing; or

- the giving of or failure to give any direction or instruction if that giving or failure to give is the primary cause of the injury or damage.

*Architect, engineer, or surveyor professional services by protect person indemnity* means that part which indemnifies any person or organization for injury or damage that results from the performance of or failure to perform architect, engineer, or surveyor professional services by the protected person who is an architect, engineer, or surveyor.

*Architct, engineer, or suyrveyor professional services* includes:

- the preparation or approval of any drawing and specification, or any map, opinion, report, survey, change order, field order, or shop drawing; and

- any architectural, engineering, inspection, or supervisory activity.

*Indemnitee* means any person or organization that you have agreed under a covered contract to indemnify or hold harmless.

### B. St. Paul's Motion to Dismiss

#### 1. Additional insured

St. Paul argues that Stokes is not an additional insured because Rozel did not agree in a written contract to procure insurance for Stokes. The additional protected persons endorsement provides that additional insureds are persons or organizations for which Rozel agreed to provide insurance in a written contract, and that such persons or organizations are covered for damage that results from Rozel's work to which the insurance policies apply. The Master Service Contract between Rozel and Stokes did not require Rozel to procure insurance for Stokes. Therefore, Stokes is not an additional insured under the policies.

#### 2. Contractual Indemnitee

St. Paul argues that Stokes cannot bring an action against it for defense and indemnity as a contractual indemnitee under either Louisiana or Texas law.[7] St. Paul argues that only insureds have the right to bring an action against and insurance company for defense and indemnity under Louisiana and Texas law. Specifically, St. Paul argues that the right to seek defense and indemnity for Stokes belongs solely to Rozel, and Stokes, as a third party to the contracts, cannot seek to enforce Rozel's rights under the contracts. Also, St. Paul also argues that Stokes cannot state a claim for defense and indemnity against it under Louisiana Direct Action Statute, La. Rev. Stat. §

---

[7] The parties dispute whether Louisiana or Texas law applies to this matter. A choice of law determination is not necessary to resolve the issues presented in St. Paul's motion to dismiss.

22:1269(B)(1), because that statute allows victims of tortious conduct to bring direct actions against insurers and contract claims are not cognizable thereunder. Further, St. Paul argues that Texas does not have a direct action statute that would permit the suit.

Stokes argues that its suit against St. Paul is not merely a direct action against the insurer for contractual indemnity, rather it seeks defense under policy language that directly benefits it as a contractual indemnitee. Stokes contends that it is a third-party beneficiary under the policies because Rozel agreed in the Master Service Contract to indemnify it and provide it with a defense for property damage claims, and the policies specifically provide that St. Paul will defend and indemnify it in such circumstances. Therefore, Stokes argues that it is as a third-party beneficiary under the policies.

Louisiana Civil Code article 1978 provides:

> A contracting party may stipulate a benefit for a third party called a third party beneficiary.
>
> Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

Contractual stipulations in favor of third persons are favored in Louisiana law. Andrepont v. Acadia Drilling Co., 231 So.2d 347, 350 (La. 1969). Such contracts are commonly referred to as a stipulation *pour autrui*. Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary, 939 So.2d 1206, 1212 (La. 2006). A stipulation *pour autri* is never presumed; the party claiming the benefit bears the burden of proof. Id. In Joseph, the Supreme Court of Louisiana articulated a three-part test to determine if a contract contains a stipulation *pour autrui*, and thereby confers rights in favor of a third party: (1) the contract must manifest a clear intention to benefit the third party; (2) there must be certainty as to the benefit provided to the third party; and (3) the benefit must not be merely an incident of the contract between the parties. Id. at 1212-13.

Similarly, in <u>MCI Telecomm. Corp. v. Texas Utils. Elec. Co.</u>, 995 S.W.2d 647, 651 (Tex. 1999), the Supreme Court of Texas explained Texas' law regarding third-party beneficiaries:

> The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract. A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit.
>
> To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or creditor beneficiary of the contract. One is a donee beneficiary if the performance promised will, when rendered, come to him as a pure donation. If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary . . . [T]his duty may be an "indebtedness, contractual obligation or other legally enforceable commitment" owed to the third party.
>
> In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling. A court will not create a third-party beneficiary contract by implication. The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied. Consequently, a presumption exists that parties contracted for themselves unless it "clearly appears" that they intended a third party to benefit from the contract.

(internal citations omitted).

In this case, Rozel agreed to provide defense and indemnity for Stokes for property damage sustained by others. Thus, Stokes is a contractual indemnitee under the St. Paul insurance policies. The insurance policies have clauses that are specifically designed to provide defense and indemnity to ceratin contractual indemnitees. The benefits of defense and indemnity are certain, and are not merely incidental to the contract between St. Paul and Rozel. Therefore, Stokes has stated a claim for relief against St. Paul that is plausible on its face.

However, the contractual indemnitee defense and indemnity provisions do not apply if the underlying claims against the contractual indemnitee are not covered under the policies or if the

claims arise out of the contractual indemnitee's actions as an engineer.  St. Paul argues that there is no coverage under the policies for Cashman's claims against Stokes because the claims arise out of Rozel's leasing of the barges, and Stokes' actions as an engineer.

In analyzing a motion to dismiss, the court may consider only the pleadings, the attachments thereto, and documents referenced in the complaint that are central to the claim. <u>Collins</u>, 224 F.3d at 498-99.  In its complaints, Cashman alleges that Rozel chartered, or leased the barges from it, and that Stokes was acting as an engineer.  Stokes contends that it was not acting as an engineer, but as a consultant, and that there is a dispute about whether the charter parties were void at the time of the incident.  Thus, it is not clear on the record before the court whether the contractual indemnitee provisions apply. Determining these issues would require a factual analysis that is not permitted on a motion to dismiss.

St. Paul's motion to dismiss Stokes' claims for defense and indemnity based on its status as a contractual indemnitee is DENIED, because Stokes has stated a claim that is plausible on its face.

### 3.     Stokes' Claims under the Louisiana Law for Bad Faith and the Texas Prompt Payment Statute

#### a.     Louisiana Law for Bad Faith

La. Rev. Stats. §§ 22:1892 and 22:1973 provide penalties to insured and policy beneficiaries if an insurer acts in bad faith with respect to a claim made under an insurance policy.  Both statutes require the plaintiff to have a "valid underlying claim" under the insurance contract.  <u>Phillips v. Patterson Ins. Co.</u> 813 So.2d 1191, 1195 (La. Ct. App. 2002).

Because Stokes stated a claim against St. Paul for defense and indemnity as a third-party beneficiary of the insurance policies that is plausible under Louisiana law, it can maintain a claim for bad faith under La. Rev. Stats. §§ 22:1892 and 22:1973.  Therefore, St. Paul's motion to dismiss is DENIED as to Stokes' bad faith claims under Louisiana law.

## B.    Texas' Prompt Payment Statutes

Section 542.060 of the Texas Insurance Code provides that:

> (a) If an insurer that is liable for a claim under and insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at a rate of 18 percent a year as damages, together with reasonable attorney's fees.
>
> (b) If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.

TEX. INS. CODE § 542.060.  For the purposes of this statute, "claim" means a "first-party claim that . . . is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract." Id. at § 542.051(2)(A).

To recover the penalties outlined in § 542.060, the claim must be made by an insured, policy holder, or beneficiary named in the policy.  Stokes was not an insured or policyholder.  Further, although it may be a third-party beneficiary, it is not named in the policy or contract.  Therefore, Stokes cannot state a claim for relief under the Texas Prompt Payment Statute, and that claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that St. Paul Surplus Lines Insurance Company's Motion to Dismiss all claims asserted against it by Stokes & Spiehler Offshore, Inc. (Doc. #162) is **GRANTED** as to Stokes' claim under the Texas Prompt Payment Statute, Texas Insurance Code § 542.060, and that claim is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** as to Stokes' claims for defense and indemnity and bad faith penalties under Louisiana Revised Statutes §§ 22:1892 and 22:1973.

New Orleans, Louisiana, this 27th day of February, 2012.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE