# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CASHMAN EQUIPMENT CORP.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-363** |
| **ROZEL OPERATING CO., ET AL.** | **JUDGE LEMMON** |
| | **MAGISTRATE SHUSHAN** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Cashman Equipment Corp.'s Motion for Summary Judgment (Doc. #226) is **DENIED**.

**IT IS FURTHER ORDERED** that Rozel Operating Company's Motion for Summary (Doc. #228) is **DENIED**.

**IT IS FURTHER ORDERED** that James E. Stansbury, III and Stansbury & Associates, LLC's Motion for Summary Judgment (Doc. #223) is **DENIED**.

**IT IS FURTHER ORDERED** that Stokes & Spiehler Offshore, Inc.'s Motion for Summary Judgment (Doc. #229) is **DENIED**.

**IT IS FURTHER ORDERED** that Rozel Operating Company's Motion *In Limine* to Exclude Testimony of Hjalmar Breit, III (Doc. #227) is **DENIED**.

**IT IS FURTHER ORDERED** that Cashman Equipment Corp.'s Motion to Strike Jury Demand (Doc. #225) is **DENIED**.

**BACKGROUND**

This matter is before the court on motions for summary judgment filed by Cashman Equipment Corp., Rozel Operating Company, James E Stansbury, III and Stansbury & Associates, LLC (collectively "Stansbury"), and Stokes & Spiehler Offshore, Inc. ("Stokes"). Cashman argues that there is no genuine issue of material fact that Rozel breached the charter party. Rozel argues that it is not liable to Cashman due to Cashman's material representations. Stansbury and Stokes argue that the claims against them are barred by laches. Rozel also filed a motion *in limine* seeking to exclude Cashman's expert marine surveyor, Hjalmar Breit, III. Additionally, Cashman filed a motion to strike the jury demand, arguing that the demand was made inadvertently and that a jury is not appropriate because this case is brought under the court's admiralty jurisdiction.

Rozel operates a natural gas production platform located in the Gulf of Mexico off the coast of Cameron, Louisiana in the West Cameron Block No. 2. In June 2007, Stokes, an engineering and consulting company with which Rozel has had a Master Service Contract for engineering and consulting services since November 20, 2003, arranged for Rozel to charter two barges, JMC 107 and JMC 109, from Cashman under bareboat charter parties to be used as breaker barges near the platform. In other words, Rozel intended to partially submerge the barges near the platform to alleviate wave action while work was performed to the platform. The JMC 107 and JMC 109 were originally wingwall sections of a World War II Navy drydock. Cashman represented that it had converted the wingwall sections into barges that would be suitable to use as breaker barges.

Before Rozel and Cashman entered into the charter parties, Cashman contracted with Stansbury to survey the JMC 107 and JMC 109. Stansbury subcontracted with Wade Olsen, an

independent surveyor, to perform the work. Olsen wrote a report on the condition of the JMC 105. Rozel's insurers rejected the report because it was the wrong barge. Rozel claims that Stansbury, at Cashman's instruction, changed the name of the barge on the report without additional inspections or verifying that Olsen had surveyed the JMC 109, not the JMC 105. Rozel's insurers rejected the amended report because it did not certify that the JMC 109 was fit for its intended use as a breaker barge. Rozel reported this to Cashman, who in turn reported it to Stansbury. Stansbury claims that it then called Rozel and informed Yvonne Mitchell and the project manager that it would not do an additional survey, but, based on Olson's notes, it could add a sentence to the report stating that the JMC 109 was fit for its intended use as a breaker barge. Mitchell does not recall such conversation, and Rozel claims that it was unaware that Stansbury had not personally seen or inspected the JMC 109.

Rozel retrieved the barges from Cashman in Dulac, Louisiana, began paying charter hire, and transported the barges to the platform. Two tug boats were utilized in the sinking operation. While the JMC 109 was being ballasted, the JMC 107 came loose, and one or both of the tugs went to retrieve it. When the JMC 107 was brought into position, it may have struck the end of the JMC 109, causing the JMC 109 to sustain hull damage.

On August 15, 2007, Rozel attempted to pump out the barges to return them to Cashman. The JMC 107 was raised on August 30, 2007, and returned to Cashman at Dulac, Louisiana on September 13, 2007. Rozel was unable to raise the JMC 109, and consequently, has not returned it to Cashman. Further, Rozel has ceased paying charter hire for the JMC 109 on August 30, 2007.

On June 18, 2008, Cashman filed this suit against: Rozel; Continental Insurance Company (erroneously named as CNA Insurance Company), which issued the hull and machinery insurance policy to Rozel on the JMC 109; St. Paul Surplus Lines Insurance Company, which issued a commercial general liability insurance policy and an excess insurance policy to Rozel that were effective at the time of the incident[1]; the owners of the tug boats, *in personam*; and, the tug boats, *in rem*.[2] Cashman alleges that Rozel breached the charter parties, and that Continental acted in bad faith in adjusting its claim. In its complaint, Cashman alleges that this court has subject matter jurisdiction over this action pursuant to its admiralty jurisdiction, 28 U.S.C. § 1333, and, alternatively, diversity jurisdiction, 28 U.S.C. § 1332. Cashman demanded a jury on all issues.

On June 3, 2009, Rozel filed a third-party complaint against Stansbury alleging that Stansbury signed the report on the JMC 109 without personally inspecting it; that the person who did the survey performed a "condition survey," rather than a survey to determine whether the barge was fit for its intended purpose; and, that nobody inspected the barge prior to amending the report to state that the "barge appeared fit for its intended purpose as a breaker barge."

On July 1, 2010, Cashman amended its complaint adding Stokes as a defendant, alleging that Rozel negligently entrusted the barges to Stokes, and that Stokes was negligent in the manner in which it sank and attempted to raise the barges. The amended complaint reiterated that this court has admiralty and/or diversity subject matter jurisdiction, but did not include a jury demand.

---

[1] The excess insurance policy has the same substantive provisions as the commercial general liability policy.

[2] The court dismissed Cashman's claims against St. Paul and the tug boat interests with prejudice. St. Paul settled all of the other claims in which it was involved.

## ANALYSIS

A.  **Motions for Summary Judgment**

   1.  **Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

   2.  **Cashman's and Rozel's Cross Motions for Summary Judgment (Docs. #226, 228, respectively)**

Cashman and Rozel filed cross-motions for summary judgment. Those motions demonstrate that there are many disputed issues of material fact that preclude summary judgment for either party. Therefore, Cashman's and Rozel's cross-motions for summary judgment are DENIED.

### 3. Stansbury's and Stokes' Motions for Summary Judgment (Docs. # 223, 229, respectively)

Stansbury argues that Rozel's claims against it are barred by the maritime doctrine of laches. Similarly, Stokes argues that Cashman's claims against it are barred by laches. Stansbury and Stokes argue that Rozel and Cashman unreasonably delayed in filing claims against them and that they were prejudiced by the delay.

Under maritime law, "[l]aches is an equitable doctrine, that if proved, is a complete defense to the action irrespective of whether the analogous state [prescriptive period] has run." Mecom v. Levingston Shipbuilding Co., 622 F.2d 1209, 1215 (5th Cir. 1980). "The existence of laches is a question of fact to be decided by the court after weighing the equities as they appear from the facts of each case." Esso Intern., Inc. v. S.S. Captain John, 443 F.2d 1144, 1150 (5th Cir. 1971) (citing McDaniel v. Gulf & S. Am. S.S. Co., 228 F.2d 189 (5th Cir. 1955)). When analyzing a laches defense in a maritime action, the United States Court of Appeals for the Fifth Circuit employs a three-part test: (1) whether there was a delay in asserting a right or claim; (2) whether the delay was excusable; (3) whether the delay resulted in undue prejudice to the party against whom the claim is asserted. See W. Wind Afr. Line, Ltd. v. Corpus Christi Marine Servs., Co., 834 F.2d 1232, 1234 (5th Cir. 1988) (citing Mecom, 622 F.2d at 1215).

The court must first ascertain whether there was a delay in asserting the claim under the prescriptive period for the most analogous state statute. See Mecom, 622 F.3d at 1215. If the plaintiff files its claim within the analogous state prescriptive period, the defendant must demonstrate inexcusable delay in filing, and resulting prejudice to prove its laches defense. Id.

However, if the analogous state prescriptive period runs prior to the plaintiff's filing its claim, the plaintiff must prove an absence of prejudice or an excuse for the delay to defeat the defendant's laches defense. Id.

The second element considered in evaluating a laches defense is whether the delay is excusable. Id. Delay in filing may be excused when the party against whom the claim is made has notice of the claim and ample opportunity to investigate. W. Wind Afr. Line, 834 F.2d at 1234.

The third factor considered in evaluating a laches defense is whether the defendant was unduly prejudiced by the plaintiff's inexcusable delay. To establish undue prejudice, the defendant must be subjected "to a disadvantage in asserting and establishing his claimed right to defense." Id. (citing Point Landry Inc. v. Ala. Dry Dock & Shipbuilding Co., 261 F.2d 861 (5th Cir. 1958)). "[L]oss of records, destruction of evidence, fading memories, or unavailability of witnesses," may constitute prejudice sufficient to bar a claim under laches. Cornetta v. United States, 851 F.2d 1372, 1378 (Fed. Cir. 1988).

    a.  **Stansbury (Doc. #223)**

Rozel filed its third-party demand against Stansbury on June 3, 2009. Stansbury argues that Rozel unreasonably delayed in filing its claims against Stansbury because Rozel knew of those claims when the JMC 109 could not be raised in August 2007. Stansbury argues that it was unduly prejudiced by Rozel's delay because it did not have the opportunity to examine the JMC 109, and other evidence, or prepare a defense.

Stansbury was not unduly prejudiced by Rozel's filing its claims against it on June 3, 2009, because the litigation was in the early stages when Stansbury was added, *i.e.* only three depositions

7

had been taken, one of which was Stansbury's, Stansbury was represented by counsel at its deposition, and P.E. Gilligan was re-deposed after Stansbury was added to the litigation. Further, there was no loss of records, destruction of evidence, fading memories, or unavailability of witnesses that would result in prejudice to Stansbury. Therefore, Stansbury's motion for summary judgment is DENIED.

### b. Stokes (Doc. #229)

Cashman filed its tort claims against Stokes on July 1, 2010. Stokes contends that Cashman inexcusably delayed in filing its claims against Stokes because Cashman knew of Stokes's involvement with the JMC 109 when it was chartered, and that Cashman knew of its cause of action against Stokes when the JMC 109 could not be debalasted in August 2007. Stokes argues that it was unduly prejudiced by Cashman's inexcusable delay because its employees did not have legal representation at their depositions which were taken prior to Stokes's being added to the litigation, and it could not participate in depositions and other discovery that occurred before it was added to the litigation.

Stokes was not unduly prejudiced by Cashman's filing its claims against it on July 1, 2010 because Stokes had two years to re-take any deposition it deemed necessary; it chose not to have representation for its employees at their depositions when it knew of its involvement in the events that form the basis of this action; and there has been no loss of records, destruction of evidence, fading memories, or unavailability of witnesses that would result in prejudice to Stokes. Therefore, Stokes's motion for summary judgment is DENIED.

8

B.     Rozel's Motion *In Limine* Regarding Hjalmar Breit, III (Doc. #227)

Rozel seeks to exclude the testimony of Cashman's marine surveyor, Hjalmar Breit, III, arguing that Briet should not be permitted to testify because his testimony will not aid the trier of fact.

Breit issued his initial report on November 9, 2009, and a supplemental report on January 13, 2012. In those reports, Breit opines that the JMC109 was suitable to serve as a breaker barge, and the estimated value of the MJC 109 at the time that Rozel chartered it was $2,000,000. Breit also opines that the damage to the JMC 109 that prevented it from being deballasted and returned to Cashman could have been caused by: returning the JMC 107; contact between the vessels; using it as a mooring location for drilling support vessels; failure to use steel pilings to hold the barge in place and to matte the location; bad weather; hidden defect in the steel plate.

Rozel argues that Breit should be excluded because he is unqualified and his opinions are based on speculation. Rozel contends that Breit is not qualified to offer opinions regarding the fitness of the JMC 109 for use as a breaker barge because he has no experience as a metallurgist or naval architect. Also, Rozel argues that Breit has no evidence to support his conclusions regarding the cause of the damage to the barge, or the valuation he places upon it. Rozel also contends that Breit's testimony would be cumulative because Cashman's has another marine surveyor, Jules Schubert, and that Cashman should use Schubert.

Cashman argues that Breit is qualified to testify as a marine surveyor because he has over fifty years of experience in the maritime industry. Cashman argues that Breit's opinions are based on that experience, and that Rozel's arguments impact the weight to be given to Breit's testimony

9

not it admissibility. Cashman argues that Breit's opinions are not speculative because he based his opinions on hundreds of pages of documents and multiple dive surveys. Cashman argues that Rozel's concerns can be handled by cross-examination.

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. Gen. Elec. Co. v. Joiner, 118 S.Ct. 512, 515 (1997). Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharms., 113 S.Ct. 2786, 2795 (1993), the Supreme Court of the United States held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." To perform its gatekeeping function, the court must first determine whether the proffered expert testimony is reliable. The party offering the testimony bares the burden of establishing its reliability by a preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. See Daubert, 113 S.Ct. at 2796. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. See id. at 2795. Next, the court must determine whether the expert's reasoning or methodology "fits" the facts

of the case and whether it will assist the trier of fact to understand the evidence, *i.e.* whether it is relevant. See id. at 2795-96.

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. Rushing v. Kan. City S. Ry. Co., 185 F.3d 496 (5th Cir. 1999). A witness qualified as an expert is not strictly confined to his area or practice, but may testify regarding related applications, rather "a lack of specialization does not affect the admissibility of the opinion, but only its weight." Wright v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991).

Breit's testimony is reliable and relevant. He provides opinions that are based upon his experience as a marine surveyor and review of the evidence. Also, his testimony is relevant because it will assist the fact-finder in understanding issues regarding the condition and value of the JMC 109. Rozel's concerns regarding Breit's testimony can be addressed by cross-examination and the presentation of countervailing expert testimony. Thus, the motion *in limine* is DENIED.

**C.     Cashman's Motion to Strike Jury Demand (Doc. #225)**

Cashman moves to strike its jury demand arguing that a jury trial is inappropriate in this matter because it is brought under the court's admiralty jurisdiction, 28 U.S.C. § 1333. Cashman claims that it inadvertently made a jury demand it its complaint, but that it realized the error and deleted that demand from its amended complaint. Cashman contends that its inclusion of *in rem* claims against the tug boats in its complaint evidences its intent to have a bench trial in this matter.[3]

---

[3] Those claims have been dismissed.

Cashman argues that its stipulations regrading a jury trial have no effect because it never actually had the right to a trial by jury.

Rozel argues that Cashman's motion should be denied because Cashman's actions demonstrate that it always intended to have a jury trial. Rozel points out that Cashman's amended complaint incorporated all of the allegations included in the original complaint, *in extenso*, and re-alleged diversity subject matter jurisdiction. Rozel also points out that Cashman did not properly make a Rule 9(h) admiralty designation; agreed to a jury trial during this court's scheduling conference on September 22, 2011; expressly stipulated in writing to a jury trial in the Eastern District of Louisiana, rather than the Middle District of Louisiana; has not obtained consent from all parties for a bench trial; and, has not previously moved to strike any party's jury demand in this matter. Rozel contends that Cashman should not be able to change its course at this late stage of the litigation. Further, Rozel argues that Cashman's request for a bench trial on admiralty issues cannot trump Rozel's right to a jury trial on non-admiralty issues, and that all matters should be tried to a single fact-finder.

Continental also opposes Cashman's motion to strike the jury demand. Continental argues that Cashman's motion should be denied because the court is not sitting in admiralty due to Cashman's failure to properly make a Rule 9(h) admiralty election. Continental also argues that jury trials are not prohibited when the court is sitting in admiralty, and for four years the parties have relied on Cashman's assertions that it wanted a jury trial.

The Seventh Amendment to the United States Constitution states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

Rule 38(a) of the Federal Rules of Civil Procedure preserves the Seventh Amendment right to trial by jury, or the right as given by a statute of the United States. Rule 39 provides, in pertinent part, that when a jury trial has been demanded, the trial must be by jury unless the parties agree to a nonjury trial, or "the court, on motion or its own, finds that on some or all of those issues there is no federal right to a jury trial." FED. R. CIV. P. 39(a).

Admiralty suits have historically been non-jury trials. Becker v. Tidewater, Inc., 405 F.3d 257, 259 (5th Cir. 2005). Section 1333(1), Title 28, United States Code provides that federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdictions, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The "saving to suitors" clause permits a plaintiff to bring his claim "at law" in either the federal court or state court if his claim is not within the exclusive admiralty jurisdiction of the federal courts. Luera v. M/V ALBERTA, 635 F.3d 181, 188 (5th Cir. 2011). "When a plaintiff's claim is cognizable under admiralty jurisdiction and some other basis of federal jurisdiction, the Federal Rules of Civil Procedure allow the plaintiff to expressly designate her claim as being in admiralty." Id. Rule 9(h) of the Federal Rules of Civil Procedure provides:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for the purposes of Rule 14(c), 38(e), and 82, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or

> maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

However, when the plaintiff specifically invokes the federal court's diversity subject matter jurisdiction in his complaint, the right to trial by jury under the Seventh Amendment exists. Luera, 635 F.3d at 188. In Luera, the United States Court of Appeals for the Fifth Circuit held that "the mere presence of admiralty claims in the same complaint as claims premised on diversity jurisdiction does not preclude a jury trial," and that because there is no express prohibition on jury trial in admiralty cases "concerns of judicial economy and the fair administration of justice override the historic tradition of trying admiralty claims to the bench when the claims are closely related." Id. at 190 and 194.

In this case, Cashman invoked this court's admiralty jurisdiction and diversity jurisdiction in its complaint. Cashman did not specify which claims were admiralty claims, and which were diversity claims. Indeed, none of Cashman's remaining claims are within the court's exclusive admiralty jurisdiction. Cashman made a jury demand on all claims, and has taken numerous actions to confirm its intent to have a trial by jury. Cashman clearly invoked its Seventh Amendment right to trial by jury, and all of the parties in this litigation have relied upon that representation for four years. Trial in this matter is scheduled to commence on July 16, 2012. Cashman cannot claim at this late stage of the litigation that it intended to exclusively invoke the court's admiralty jurisdiction. Therefore, Cashman's motion to strike the jury demand is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Cashman Equipment Corp.'s Motion for Summary Judgment (Doc. #226) is **DENIED**.

**IT IS FURTHER ORDERED** that Rozel Operating Company's Motion for Summary (Doc. #228) is **DENIED**.

**IT IS FURTHER ORDERED** that James E. Stansbury, III and Stansbury & Associates, LLC's Motion for Summary Judgment (Doc. #223) is **DENIED**.

**IT IS FURTHER ORDERED** that Stokes & Spiehler Offshore, Inc.'s Motion for Summary Judgment (Doc. #229) is **DENIED**.

**IT IS FURTHER ORDERED** that Rozel Operating Company's Motion *In Limine* to Exclude Testimony of Hjalmar Breit, III (Doc. #227) is **DENIED**.

**IT IS FURTHER ORDERED** that Cashman Equipment Corp.'s Motion to Strike Jury Demand (Doc. #225) is **DENIED**.

New Orleans, Louisiana, this __28th__ day of June, 2012.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE