# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| CASHMAN EQUIPMENT CORP. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-363 |
| ROZEL OPERATING CO., ET AL. | JUDGE LEMMON |
| | MAGISTRATE SHUSHAN |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Cashman's Motion to Correct a Clerical Error Under Rule 60 of the Federal Rules of Civil Procedure (Doc. # 364) is **GRANTED** and Cashman is awarded pre-judgment interest at the Louisiana interest rate, beginning on August 30, 2007, as to its damages against Rozel, and beginning on July 1, 2010, as to its damages against Stokes, and post-judgment interest as to its damages against Rozel and Stokes at the federal interest rate from the date of the judgment. Cashman's Motion for a New Trial (Doc. #364) is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that, considering Cashman's Motion for Attorneys' Fees and Costs (Doc. #362), the record, the applicable law, the United States Magistrate Judge's Report and Recommendation (Doc. #379), and the parties' objections to the United States Magistrate Judge's Report and Recommendation (Docs. #380, 381), hereby approves the United States Magistrate Judge's Report and Recommendation and adopts it as its opinion in this matter with respect to the amount of attorneys' fees and costs awarded to Cashman from Rozel. Accordingly, Cashman is awarded $129,669.62 in attorneys' fees and $15,471.12 in costs from Rozel.

## BACKGROUND

This matter is before the court on a motion for new trial filed by Cashman Equipment Corporation. Cashman argues that: (1) it should have been awarded charter hire as a matter of law; (2) it was legal error to "merge" its causes of action against Rozel and Stokes; (3) the enforceability

of the agreed value of the JMC 109 was an issue of law that should not have been submitted to the jury; (4) Rozel should be required to exhaust the funds it received from its settlement with St. Paul Surplus Lines Insurance Company before seeking reimbursement from the settlement funds deposited into the registry of the court by Continental Insurance Company; and, (5) the Judgment should specify that Cashman is awarded pre-judgment interest, the interest rate and the date on which it began to accrue, along with post-judgment interest and its interest rate.

Rozel operates a natural gas production platform located in the Gulf of Mexico off the coast of Cameron, Louisiana in the West Cameron Block No. 2. In June 2007, Stokes, an engineering and consulting company with which Rozel has had a Master Service Contract for engineering and consulting services since November 20, 2003, arranged under bareboat charter parties for Rozel to charter from Cashman two barges, JMC 107 and JMC 109, to be used as breaker barges near the platform. Rozel intended to partially submerge the barges near the platform to alleviate wave action while work was performed on the platform. The JMC 107 and JMC 109 were converted wingwall sections of a World War II Navy drydock. Cashman represented to Stokes and Rozel that it had converted the wingwall sections into barges that would be suitable to use as breaker barges.

Pursuant to the charter parties, Rozel retrieved the barges from Cashman in Amelia, Louisiana, began paying charter hire, and transported the barges to the platform. Stokes utilized two tug boats in the sinking operation. While the JMC 109 was being ballasted, the JMC 107 came loose, and one or both of the tugs went to retrieve it.

On August 15, 2007, Rozel attempted to pump out the barges to return them to Cashman. The JMC 107 was raised on August 30, 2007, and returned to Cashman at Dulac, Louisiana on

2

September 13, 2007. Rozel was unable to deballast the JMC 109, and consequently, has not returned it to Cashman. Further, Rozel ceased paying charter hire for the JMC 109 as of August 30, 2007.

On June 18, 2008, Cashman filed this suit against: Rozel Operating Company; Continental Insurance Company, which issued the hull and machinery insurance policy to Rozel on the JMC 109; St. Paul Surplus Lines Insurance Company, which issued a commercial general liability insurance policy and an excess insurance policy to Rozel that were effective at the time of the incident; the owners of the tug boats, in personam; and, the tug boats, in rem.[1] In its complaint alleging that Rozel breached the charter parties, Cashman asserts that this court has subject matter jurisdiction over this action pursuant to its admiralty jurisdiction, 28 U.S.C. § 1333, and, alternatively, diversity jurisdiction, 28 U.S.C. § 1332. Cashman demanded a jury on all issues.

On July 1, 2010, Cashman amended its complaint adding Stokes & Spiehler Offshore, Inc. as a defendant, alleging that Rozel negligently entrusted the barges to Stokes, and that Stokes was negligent in the manner in which it sank and attempted to raise the barges. The amended complaint reiterated that this court has admiralty and/or diversity subject matter jurisdiction, but did not include a jury demand.[2]

---

[1] Prior to trial, the court dismissed Cashman's claims against St. Paul and the tug boat interests with prejudice. St. Paul and Continental settled all of the other claims in which they were involved. Continental deposited settlement funds into the registry of the court and Cashman and Rozel entered into an agreement regarding the post-trial disbursement of the funds that depended on the outcome of the trial.

[2] On May 24, 2012, Cashman moved to strike its jury demand arguing that a jury trial was inappropriate in this matter because it is brought pursuant to the court's admiralty jurisdiction under § 1333. (Doc. #225). Cashman contended that it inadvertently included the jury demand in its complaint, but deleted the jury demand from its amended complaint. The court denied the motion, finding that Cashman invoked its right to a trial by jury when it commenced the litigation on June 18, 2008, a representation upon which all of the parties relied for four year prior to Cashman's motion. The court reasoned that none of Cashman's remaining claims were within the court's exclusive admiralty jurisdiction, and the court would not disturb the parties' long-standing reliance upon the fact that there would be a jury trial. (Doc. #255).

3

Rozel filed a counter-claim against Cashman alleging that Cashman committed fraud or fraudulently induced Rozel into chartering the JMC 109. Rozel contended that Cashman misrepresented the condition of the JMC 109 and its suitability for use as a breaker barge, or alternatively, that Rozel detrimentally relied on Cashman's representations about the JMC 109.

The case was tried to a jury from December 3, 2012 to December 10, 2012. The jury found that Cashman did not commit fraud or fraudulently induce Rozel to enter into the charter party for the JMC 109, nor did Rozel detrimentally rely on Cashman's representations about the condition of the barge. The jury found that Rozel breached the charter party by failing to return the JMC 109 in "the same good and seaworthy condition as when received" except for ordinary wear and tear. The jury found that the $2,000,000 agreed value of the JMC 109 in the charter party was not fair and reasonable, and that $200,000 was a fair and reasonable value. The jury found that Stokes' negligence in handling the JMC 109 caused Cashman to sustain damages in the amount of $200,000. The jury found that Rozel was responsible for 40% of Cashman's damages, and Stokes was responsible for 60% of Cashman's damages.

The court entered judgment on the jury verdict awarding Cashman $200,000 in damages, plus interest, with Rozel responsible for 40% of the damages and Stokes responsible for 60% of the damages. The judgment also specified that $200,000 of the funds deposited into the registry of the court by Continental be held in the registry of the court to act as a supersedeas bond for any appeal taken on behalf of Rozel and/or Stokes and/or otherwise applied toward the monetary judgment in favor of Cashman, and that the remaining excess funds held in the registry of the court be used to reimburse Rozel and/or Stokes after the JMC 109 has been successfully retrieved. Thereafter, Cashman filed this motion for new trial.

4

## ANALYSIS

A.  **Motion for New Trial**

   **1.  Legal Standard**

Rule 59 of the Federal Rules of Civil Procedure provides that the court may grant a motion for a new trial on some or all of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Rule 59 does not enumerate the specific grounds for which a new trial can be granted. See id. The United States Court of Appeals for the Fifth Circuit has stated that "a district court may grant a new trial if the court finds that the verdict is against the weight of the evidence, the damages awarded are excessive or inadequate, the trial was unfair, or prejudicial error was committed in its course." McFadden v. Wal-Mart Stores, 2006 WL 3087164, *2 (5th Cir. 2006) (citing Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1978)). Further, a new trial must be granted if the court is unable to logically reconcile an inconsistent jury verdict. Id. (citing Willard v. The John Hayward, 577 F.2d 1009, 1011 (5th Cir. 1978)). Whether to grant a motion for new trial is within the sound discretion of the trial court. Id. (citing Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998)). However "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." Del Rio Distrib., Inc. v. Adolph Coors Co., 589 F.2d 176, 179 n. 3 (citing 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2803, at 31-33 (3d ed. 1973)).

Rule 60(a) of the Federal Rules of Civil Procedure allows the court to correct a clerical mistake or a mistake arising from an oversight omission in the judgment, order, or other part of the

record. The court may do so on its own motion, with or without notice to the parties. FED. R. CIV. P. 60(a).

**2. Judge or Jury**

Cashman argues that the enforceability of the $2,000,000 agreed value of the JMC 109 in the charter party was an issue of law that should have been decided by the court, and that it should have been awarded charter hire as a matter of law.[3]

### i. The $2,000,000 Agreed Value of the JMC 109

Cashman argues that once the jury found that the charter party was a valid and enforceable contract, it should have automatically been awarded the $2,000,000 agreed value of the JMC 109, as provided in the contract without questioning the reasonableness of that value. Also, Cashman argues that the reasonableness of the agreed value was a legal issue that the court, rather than the jury, should have decided.

A stipulated damages clause in a maritime contract cannot be enforced if it is "so unreasonably large as to be a penalty." Int'l Marine, L.L.C. v. Delta Towing, L.L.C., 704 F.3d 350, 354 (5th Cir. 2013). The reasonableness of stipulated damages is determined as follows:

> The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable if it approximates the actual loss that has resulted from a particular breach, even though it may not approximate the loss that might have been anticipated under other possible situations, or if the breach approximates the loss anticipated at the time of making the contract, even though it does not approximate the actual loss. The second factor is the difficulty of proof of loss. The greater difficulty of proof of loss, the more flexibility is allowed in approximating the anticipated or actual harm.

---

[3] Cashman contends in its memorandum in support of its motion for a new trial that the jury should have found that Stokes' negligence was the proximate cause of the loss of charter hire and awarded such damages to Cashman against Stokes. Cashman did not raise this issue at trial. Thus, it will not be analyzed.

Farmers Export Co. v. M/V GEORGIS PROIS, 799 F.2d 159, 162 (5th Cir. 1986) (internal citations omitted).

The jury was instructed regarding stipulated damages, as follows:

> Parties to a contract may stipulate, or agree on, the amount of damages to be recovered in case of breach of the contract. Stipulated damages are enforced when they are a fair and reasonable attempt to fix just compensation for an anticipated loss caused by a breach of contract.[4] However, stipulated damages are not enforced when they are not a fair and reasonable attempt to fix just compensation for an anticipated loss caused by a breach of contract, or if the stipulation was procured by fraud.[5]
>
> \* \* \*
>
> Stipulated damages may not include a penalty for nonperformance. However, the stipulated damages may be equal to the actual loss that has resulted from a particular breach, or the loss anticipated at the time of making the contract. Further, if it is difficult to prove the amount of the loss, the parties are allowed great flexibility in setting the stipulated damages for a breach of the contract.[6]

Whether a stipulated damages clause is unreasonable, and thus an impermissible penalty, is a question of law for the court. Id. However, in determining reasonableness, the court must rely on findings of fact. Int'l Marine, L.L.C., 704 F.3d at 354 (quoting Farmers Export, 799 F.2d at 164). The jury's finding regarding the reasonableness of the agreed value of the JMC 109 is based on factual findings, and will be treated as an advisory verdict. See id. at 354-55.

---

[4] This jury instruction was derived from Prieb & Sons v. United States, 68 S.Ct. 123, 126 (1947). ("When [liquidated damages] are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced").

[5] Rozel alleged that Cashman committed fraud or fraud in the inducement in connection with the charter party. The jury specifically found that Cashman did not commit fraud or fraud in the inducement.

[6] This paragraph was derived from Farmers Export, 799 F.2d at 162, quoted herein above.

7

The evidence admitted at trial demonstrated that on March 31, 2006, Cashman paid $50,000 for the wing wall that became the JMC 109. Cashman initially insured the JMC 109 for $50,000, and listed its value as $64,332.40 on its internal records.[7] There no evidence that the $2,000,000 agreed value of the JMC 109 in the charter party approximated the actual value of the JMC 109. Based on these facts, the jury reasonably concluded, and the court concurs, that a reasonable value of the JMC 109 was $200,000.

### ii. Lost Charter Hire

Cashman argues that the jury verdict is inconsistent in that the jury found that Rozel breached the charter party by failing to return the JMC 109 to Cashman, but found that Rozel did not breach the charter party by failing to pay charter hire. Cashman argues that under the terms of the charter party, Rozel was obligated to pay charter hire until the JMC 109 was returned to Cashman, or until it was declared a constructive total loss. Cashman argues that when the JMC 109 was a "total loss" is a legal issue, and the court should have awarded it charter hire from the date Rozel stopped paying, August 30, 2007, until the JMC 109 was deemed a total loss. Cashman contends that the JMC 109 was not a total loss until February 28, 2008, when Rozel received an estimate of $3,000,000 to retrieve the JMC 109, which exceeded the JMC 109's $2,000,000 stipulated value. Thus, Cashman argues that it is entitled to an award of charter hire due from August 30, 2007 to February 28, 2008.

---

[7] Cashman argues that the court improperly excluded evidence that would have demonstrated that the value of the JMC 109 was $2,000,000. The court excluded this evidence, which included surveys of other barges in Cashman's fleet, as irrelevant because the other barges that Cashman sought to use as comparisons were completely different from the JMC 109 and were not appropriate indicators of the value of the JMC 109.

8

Rozel argues that no charter hire was due after August 30, 2007, because that is when the vessel became a constructive total loss. Rozel argues that Cashman, as the claimant under the contract, had the burden of proving its entitlement to lost charter hire, and that Cashman did not prove that the vessel was not deemed a constructive total loss as of August 30, 2007. Specifically, Rozel argues that Cashman did not prove that it would have cost less than the fair market value of the JMC 109 to raise it on August 30, 2007.

A vessel is a constructive total loss when the repair costs exceed the fair market value of the vessel immediately prior to the casualty. Gaines Towing and Transp., Inc. v. Atlantia Tanker Corp., 191 F.3d 633, 635 (5th Cir. 1999). When a vessel is a constructive total loss "the market value of the vessel is the ceiling of recovery." Id. (citing Pizani v. M/V COTTON BLOSSOM, 669 F.2D 1084, 1088 (5th Cir. 1982); O'Brien Bros. v. THE HELEN B. MORAN, 160 F.2D 502, 505 (2nd Cir. 1947)). "Damages for loss of use may not be awarded when the vessel is a constructive total loss." Id. (citing Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc., 792 F.2d 489, 491 (5th Cir. 1986)).

Whether a vessel is a "constructive total loss" is a mixed issue of fact and law because it requires factual findings. Mixed questions of law and fact are properly submitted to the jury. Int'l Paper Co. v. Busby, 182 F.2d 790, 792 (5th Cir. 1950). Thus, this issue was properly submitted to the jury for determination.

The jury was instructed that "[t]he burden of proof in an action for breach of contract is on the party claiming rights under the contract." The jury was also instructed, regarding damages, that:

> A claimant has the burden of proving damages by a preponderance of the evidence, and it is for you to determine what, if any, damages have been proved. You should not award damages for speculative injuries or losses, but only for those injuries or losses which the claimant, has proved it actually sustained.

9

>     \*    \*    \*
>
> If you find in favor of a claimant that the other party breached a contract between the parties, then you are to award that claimant the damages it proved that it sustained because of the other party's breach. You are to measure such breach of contract damages by the loss sustained by the claimant and the profit of which it has been deprived. If neither item of damages is present, there has been no damage and no reparation is owed.

Cashman did not meet its burden of proving that Rozel breached the charter party by failing to pay charter hire or that it is due charter hire from August 30, 2007, until February 28, 2008. As the claimant under the contract, to recover for lost charter hire, Cashman had the burden of proving that the JMC 109 was not a constructive total loss on August 30, 2007. There is no evidence that the cost of raising the JMC 109 would have been less on August 30, 2007, than either the vessel's stated value of $2,000,000, or reasonable value of $200,000. Thus, the vessel was a constructive total loss when it was unable to be deballasted, and Cashman is not entitled to additional charter hire from August 30, 2007, and Cashman's motion for new trial as to its entitlement to lost charter hire and the value of the JMC 109 is DENIED.[8]

### 3. "Merging" Cashman's causes of action against Rozel and Stokes

Cashman argues that it was legal error to "merge" its "discrete causes of action against" Rozel and Stokes. Cashman alleged a breach of contract claim against Rozel and a tort claim against Stokes, and argues that the jury awarded it $200,000 for Rozel's breach of contract and $200,000 for Stokes' negligence. Cashman argues that asking the jury to quantify the percentage of its

---

[8] Cashman has not proved that it was prejudiced, or that substantial justice was not done, by submitting the question of charter hire to the jury. Considering the evidence admitted at the trial, the court would have reached the same conclusions as the jury regarding Cashman's failure to prove that it was entitled to lost charter hire. The court also notes that Rozel introduced evidence that the JMC 109 was not fit for use as a breaker barge because it lacked water-tight compartments that are required for proper ballasting and deballasting. The JMC 109's lack of internal structure made it reasonable for Rozel to assume that the JMC 109 was a constructive total loss and cease paying charter hire when it was unable to raise the JMC 109 on August 30, 2007.

10

damages attributable to Rozel and Stokes improperly merged Rozel's liable for a breach of contract and Stokes' liable for a tort.

"Proportional damages based on degrees of fault is now the general rule for damages in maritime property cases." Agrico Chem. Co. v. M/V BEN W. MARTIN, 664 F.2d 85, 93 (5th Cir. 1981) (holding the defendants comparatively at fault where one was liable under the contractual duty of workmanlike performance, and the other under general negligence principles). Further, two parties may be found liable for the same set of damages although the theories of liability differ. See LA. CIV. CODE art. 1791 ("An obligation may be solidary though it derives from a different source for each obligor"); LA. CIV. CODE art. 2323(B) ("The provisions of Paragraph A [comparative fault] shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability").

The jury found the reasonable value of the JMC 109 was $200,000, and that Cashman sustained $200,000 in damages as a result of Stokes' negligent handling of the JMC 109. The jury further found that the damages Cashman sustained were caused 40% by Rozel and 60% by Stokes. There was no quantification of the damages caused by Rozel's failure to return the vessel. Cashman argues that the jury's findings are inconsistent and that it is entitled to a new trial. However, even if the jury's findings are inconsistent, a new trial is not necessary if the court can logically reconcile the jury's findings. McFadden, 2006 WL 3087164, at *2.

In this case, Cashman's damages cannot exceed the fair and reasonable value of the vessel, which the jury found, and the court concurs, was $200,000.[9] Gaines Towing, 191 F.3d at 635 (When

---

[9] Cashman argues that the jury's award of $200,000 against Stokes could have been for expenses, such as dive surveys and sonar scans, that Cashman incurred after the JMC 109 could not be retrieved on August 30, 2007. When a vessel is a total loss, the vessel owner may "be reimbursed for the necessary expense of raising the barge, to determine whether it could be repair advantageously or not, and because it was liable to become an obstruction to navigation." Louisville & Cincinnati Packet Co. v. United Coal Co.,

a vessel is a constructive total loss "the market value of the vessel is the ceiling of recovery"). The inconsistent verdict can be reconciled by attributing the percentages of damages caused by both defendants, as found by the jury, to the value of the vessel, as determined by the jury and adopted by the court. Thus, Cashman's motion for a new trial is DENIED as to finding error in "merging" its causes of action against Rozel and Stokes.

### 4. Rozel's Use of the St. Paul Settlement Funds

Cashman argues that Rozel should be required to exhaust the funds it received from its settlement with St. Paul to pay for raising the JMC 109 before seeking reimbursement from the settlement funds deposited into the registry of the court by Continental. Cashman argues that Rozel should be forced to use funds from St. Paul for raising the JMC 109 because the St. Paul policy included wreck removal and such liability was contemplated in that settlement. Cashman argues that the Continental policy did not include such coverage, thus wreck removal liability was not contemplated in that settlement. Cashman argues that it would be unfair to allow Rozel to use the Continental funds for wreck removal.

Prior to trial, Cashman and Rozel entered into a settlement agreement with Continental whereby Continental deposited $1,500,000 into the registry of the court, and the parties agreed to terms for the post-trial disbursement of the funds. In that agreement, Cashman and Rozel agreed that:

---

223 F. 300, 304 (6th Cir. 1915). Cashman included various cancelled checks and invoices in its exhibit books that show that it spent a total of $30,278 on dive surveys, sonar scans, and sue and labor charges after the JMC 109 could not be raised. No evidence exists to support Cashman's argument that an additional $200,000 was incurred in connection with this loss. Besides, the JMC 109 was a constructive total loss that was abandoned on August 30, 2007, and Rozel has assumed the responsibility of raising it. Cashman offers no explanation as to why such expenses were incurred, and never directly presented the evidence to the jury. Thus, Cashman's recovery is limited to the reasonable value of the vessel, $200,000, and Cashman cannot recover any amounts in excess of that value.

12

> The Continental Funds ($1.5M) will be applied toward any judgment for monetary damages taken by Cashman against Rozel and/or Stokes and/or taken by Rozel against Cashman and held in the registry of the court pending all appeals to secure such money judgment. Any excess Continental Funds over and above such monetary damage awards will be held in the registry of the Court to reimburse the party(ies) held responsible to retrieve the JMC 109 (Rozel, Stokes and/or Cashman – but not Stansbury) for such retrieval after the JMC 109 has been successfully retrieved.
>
> \* \* \*
>
> The parties agree that (i) they will not litigate entitlement to the Continental Funds under the terms of the policy and/or defenses thereto, (ii) the Court will allocate the Continental Funds in accordance with the terms contained herein, without consideration of any Continental policy terms or rights or defenses under same, and (iii) to the extent these terms do not cover a scenario at trial, the Court will allocate the Continental Funds in accordance with the verdict and law, applying same in the manner the Court determines is in compliance with the intent of the parties, as documented herein.

Thus, Cashman and Rozel's pre-trial agreement regarding the disbursement of the Continental funds establishes that any funds in excess of a money judgment for either party would be applied to reimburse the party held responsible to retrieve the JMC 109. In light of the jury verdict, Rozel has assumed such responsibility. The jury awarded Cashman $200,000 in monetary damages, therefore, per the parties' agreement, the remainder of the Continental funds is available to Rozel to cover the cost of retrieving the JMC 109. Thus, Cashman's motion for a new trial is DENIED as to Rozel's use of the St. Paul settlement money to retrieve the JMC 109.

**5. Interest**

Cashman argues that the judgment should specify that the Louisiana interest rate applies and that interest began to accrue on August 30, 2007, because Rozel ceased paying charter hire when

13

it could not raise the JMC 109 on that date.[10]

When a federal district court exercises diversity subject matter jurisdiction under 28 U.S.C. § 1332, such as in this case, pre-judgment interest on a money judgment is determined by state law, whereas post-judgment interest on money judgments is governed by 28 U.S.C. § 1961(a). See Fuchs v. Lifetime Doors, Inc., 939 F.2d 1275, 1280 (5th Cir. 1991). Louisiana Civil Code article 2000 provides that, "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due . . . at the rate of legal interest fixed by R.S. 9:3500." In St. Paul's Evangelical Lutheran Church v. Quick Response Restoration, Inc., 381 F. App'x 408, 412 (5th Cir. 2010), the United States Court of Appeals for the Fifth Circuit noted that:

> Louisiana substantive law presumes that interest will be awarded on judgments, LA. CIV. CODE art. 2000, and "a debt or claim for payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date."

(quoting Mini Togs Prods., Inc. v. Wallace, 513 So.2d 867, 873 (La. Ct. App. 1987)).

On the other hand, Louisiana law provides that interest is calculated from the date of judicial demand for tort damages. LA. REV. STAT. § 13:4203. As the United States Court of Appeals for the Fifth Circuit explained in In re Matter of Complaint of Settoon Towing, L.L.C., - - - F.3d - - -, 2013 WL 3013868, at *13 (5th Cir. 6/18/2013), Louisiana law distinguishes between "ex delicto" and "ex contractu" damages:

---

[10] Rozel and Stokes argue that the court has discretion in maritime cases to deny pre-judgment interest, and that this is a case were it should be denied because there was a genuine dispute over a good faith claim and Cashman was awarded substantially less than it had claimed. In the judgment, the court awarded interest to Cashman. Rozel and Stokes did not file a motion to amend the judgment to eliminate the interest award. Therefore, this argument will not be analyzed.

14

> The Louisiana Court of Appeals explained that "the classic distinction between 'damages *ex contractu*' and damages '*ex delicto*' is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons."

(quoting Amoco Proc. Co. v. Tex. Meridian Res. Exploration Inc., 180 F.3d 664, 672 (5th Cir. 1999) (alterations removed) (quoting Davis v. LeBlanc, 149 So.2d 252, 254 (La. Ct. App. 1963)).

In this case, Cashman's damages against Rozel are "ex contractu" because they "flow from the breach of a special obligation contractually assumed by the obligor." Id. (quoting Davis, 149 So.2d at 254). Thus, pre-judgment interest, at the rate set by La. Rev. Stat. § 9:3500, on Cashman's damages from Rozel began to accrue on August 30, 2007, when Rozel failed to return the JMC 109.

Cashman's damages against Stokes are "ex delicto" because they arose from the breach of a duty. Therefore, pre-judgment interest, at the rate set by La. Rev. Stat. § 9:3500, on Cashman's damages from Stokes began to accrue on July 1, 2010, the date of judicial demand, when Cashman filed its amended complaint adding claims against Stokes.

Title 28, United States Code, Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and "[s]uch interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Thus, Cashman is entitled to post judgment interest on the awards agaisnt Rozel and Stokes under §1961 from the date of the judgment until the damages are paid.

**B.     Attorney's Fees**

The charter party for the JMC 109 states that:

> The CHARTERER further agrees that in the event of any legal action or arbitration arising out of or as a result of CHARTERER's breach or default of any of the provisions and covenants of this charter, that said CHARTERER shall pay reasonable attorney's fees incurred by OWNER and all costs involved therein.

Thus, in accordance with the terms of the charter party, the Judgment in this matter provided:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Cashman Equipment Corporation is awarded the reasonable attorneys' fees and costs incurred in its prosecution of its claims against Rozel Operating Company, Inc. on which it was successful, all in accordance with the terms of the charter party for the JMC 109.

This court referred the matter to the United States Magistrate Judge for a Report and Recommendation on the amount of attorneys' fees and costs that should be awarded to Cashman. Cashman sought $518,678.50 in attorneys' fees and $61,884.50 in costs. Cashman submitted bills that included block billing entries.

The Magistrate Judge determined that Cashman had limited success on its claims against Rozel, obtaining only 10% of the recovery it sought, and determined that Cashman's defeating Rozel's fraud claims were essential to Cashman's ability to prevail on any of its claims against Rozel. The Magistrate Judge reviewed Cashman's bills, and noted that the block billing made it impossible for her to determine the attorneys' fees and costs that pertained exclusively to claims upon which Cashman was successful. The Magistrate Judge applied the lodestar method, and reduced Cashman's requested attorneys' fee by 15% to $440,876.50, but found that amount, was excessive considering Cashman's limited success. Thus, the Magistrate Judge found that an award of 25% of the total attorneys' fees and costs incurred by Cashman was reasonable, and recommended that

Cashman be awarded $129,669.62 in attorneys' fees and $15,471.12 in costs.

In Hensley v. Eckerhart, 103 S.Ct. 1933, 1942-43 (1983), the Supreme Court of the United States found that an attorneys' fees and costs award should be reasonable in light of the level of success. The court stated that "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 1943.

In this case, Cashman had a limited amount of success as compared with the scope of the litigation as a whole. Cashman sought in excess of $2,000,000, and the jury awarded it only $200,000. The Magistrate Judge's recommendation of awarding Cashman 25% of the attorneys' fees and costs sought is reasonable in light of the circumstances, and is hereby adopted by this court.

## CONCLUSION

**IT IS HEREBY ORDERED** that Cashman's Motion to Correct a Clerical Error Under Rule 60 of the Federal Rules of Civil Procedure (Doc. # 364) is **GRANTED** and Cashman is awarded pre-judgment interest at the Louisiana interest rate, beginning on August 30, 2007, as to its damages against Rozel, and beginning on July 1, 2010, as to its damages against Stokes, and post-judgment interest as to its damages against Rozel and Stokes at the federal interest rate from the date of the judgment. Cashman's Motion for a New Trial (Doc. #364) is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that, considering Cashman's Motion for Attorneys' Fees and Costs (Doc. #362), the record, the applicable law, the United States Magistrate Judge's Report and Recommendation (Doc. #379), and the parties' objections to the United States Magistrate Judge's Report and Recommendation (Docs. #380, 381), hereby approves the United States Magistrate Judge's Report and Recommendation and adopts it as its opinion in this matter with respect to the amount of attorneys' fees and costs awarded to Cashman from Rozel. Accordingly, Cashman is awarded $129,669.62 in attorneys' fees and $15,471.12 in costs from Rozel.

New Orleans, Louisiana, this  15th  day of July, 2013.

_____
      **MARY ANN VIAL LEMMON**
   **UNITED STATES DISTRICT JUDGE**

18